**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE PROCTER & GAMBLE AEROSOL PRODUCTS MARKETING AND SALES PRACTICES LITIGATION** | **MDL No. 3025** |

**PLAINTIFFS MATTHEW LOPEZ, ERIK VELASQUES, FRANK ORTEGA,
ERICA ESQUIVEL AND JOSHUA WALLACE'S RESPONSE
TO THE MOTION FOR TRANSFER OF ACTIONS PURSUANT
TO 28 U.S.C. § 1407 FOR CENTRALIZED PRETRIAL PROCEEDINGS**

...

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.     The Related Actions and Any Tag-Along Actions Are Appropriate for Transfer and Coordination Pursuant to 28 U.S.C. § 1407(a) . . . . . . . . . . . . . . 2

          1.     The Related Actions Involve Multiple Common Questions of Fact . . . . . 2

          2.     Transfer and Coordination of the Related Actions to the Southern District of Ohio Will Further the Convenience of the Parties and the Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

          3.     Coordination Will Promote the Just and Efficient Conduct of the Related Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

          4.     Centralization under Section 1407 is Appropriate Given the Number of Related Actions and the District Courts at Issue . . . . . . . . . . . 5

    B.     The Southern District of Ohio Is The Most Logical, Efficient, And Convenient Venue For The Related Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          1.     The Southern District of Ohio Serves the Convenience of the Parties and Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    C.     The Southern District of Florida Is Not An Appropriate Transferee Venue For The Constituent Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## **TABLE OF AUTHORITIES**

Cases                                                                                                                         Page

In re *Airline Baggage Fee Antitrust Litig.*,
    655 F. Supp. 2d 1283 (J.P.M.L. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    710 F. Supp. 2d 1378 (J.P.M.L. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Bausch & Lomb Inc. Contact Lens Solution Prods. Liab. Litig.*,
    444 F. Supp. 2d 1336 (J.P.M.L. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*,
    626 F. Supp. 2d 1348 (J.P.M.L. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I*n re Davo, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*,
    MDL – No. 2846  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Enfamil Lipil Mktg. & Sales Practices Litig.*,
    764 F. Supp. 2d 1356 (J.P.M.L. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    466 F. Supp. 3d 1384 (J.P.M.L. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Halftone Color Separations ('809) Patent Litigation*,
    547 F. Supp.2d 1383 (J.P.M.L. 2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Johnson & Johnson Talcum Powder Products Liability Litigation*,
    220 F. Supp.3d 1356 (J.M.P.L 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
    659 F. Supp. 2d 1366 (J.P.M.L. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re LLRice 601 Contamination Litig.*,
    466 F. Supp. 2d 1351 (J.P.M.L. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    363 F. Supp. 3d 1372 (J.P.M.L. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Nine W. LBO Sec. Litig.*,
    464 F. Supp. 3d 1383 (J.P.M.L. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re: Philips Recalled CPAP, Bi-Level PAP, and*
  *Mechanical Ventilator Products Liability Litigation,*,
  No. MDL 3014, 2021 WL 4704801 (U.S. Jud. Pan. Mult. Lit. Oct. 8, 2021) . . . . . . . . . . 7

*In re the Regents of the Univ. of California*,
  964 F.2d 1128 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Rembrandt Techs., LP, Patent Litigation*,
  493 F. Supp.2d 1367 (J.P.M.L. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Smith & Nephew BHR & R3 Hip Implant Products Liability Litigation*,
  MDL 2775, --- F. Supp.3d ---, 2017 WL1283668 (J.P.M.L 2017) . . . . . . . . . . . . . . . . . . 9

*In re Union Pac. R.R. Co. Empl. Practices Litig.*,
  314 F. Supp. 2d 1383 (J.P.M.L. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Wheat Farmers Antitrust Class Action Litig.*,
  366 F. Supp. 1087 (J.P.M.L. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Zofran (Ondansetron) Prod. Liab. Litig.*,
  138 F. Supp. 3d 1381 (J.P.M.L. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sony Gaming Networks,*
  MDL No. 2258 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATUTES:

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 1407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. §1407(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4

OTHER AUTHORITIES:

Manual for Complex Litigation (Fourth), §20.131 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Manual for Complex Litigation (Fourth), §20.131 (4th ed. 2004) . . . . . . . . . . . . . . . . . . . . . . 2, 3

https:www.uscourts.gov/statistics/table/na/federal-court-management-statistics/
   2021/06/30-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

https://www.uscourts.gov/statistics/table/c-1/statistical-tables-federal-judiciary/
   2021/06/30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_
   District-December-15-2021.pdf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.      **PRELIMINARY STATEMENT**

Plaintiffs Matthew Lopez, Erik Velasques, Frank Ortega,[1] Erica Esquivel and Joshua Wallace,[2] (collectively, "Plaintiffs"), respectfully submit this response, pursuant to JPML Rule of Procedure 6.2(e), to the motion by Defendant The Procter & Gamble Company ("P&G) for centralization of pretrial proceedings and transfer to the Southern District of Florida under 28 U.S.C. § 1407 (ECF No. 1).

Plaintiffs support consolidation and centralization of the actions pursuant to 28 U.S.C. § 1407, but Plaintiffs do not agree that the Related Actions should be transferred to the Southern District of Florida because the Defendant is not located in that District, and transfer to the Southern District of Florida will not serve the convenience of the parties or the witnesses. Indeed, as discussed below, P&G concedes that it has no particular relationship to the Southern District of Florida, but seeks transfer and centralize of the Related Actions there because – by pure happenstance – it is the venue of the first-filed of the 19 Related Actions to date.

Rather, Plaintiffs submit, the Panel should transfer and centralize the Related Actions to the Southern District of Ohio because it is clearly the "center of gravity" of the Related Actions. P&G's headquarters is located in Cincinnati, Ohio, and the Southern District of Ohio is likely to host the most relevant evidence and witnesses, making it best-suited to coordinate pretrial proceedings in the Related Actions. Contrary to the Defendant's misreading of the U.S. District Court statistical summaries, the Southern District of Ohio is not overburdened by a pending case load many times that of the Southern District of Florida, and is fully capable of accommodating an MDL such as this.

---

[1] *Lopez, et al. v. The Procter & Gamble Company*, No. 1:21-cv-0723 (S.D. Ohio).

[2] *Esquivel, et al. v. The Procter & Gamble Company*, No. 1:21-cv-00762 (S.D. Ohio).

1

To Plaintiffs' knowledge, there are currently at least nineteen putative class actions pending on behalf of overlapping classes of consumers (collectively, the "Related Actions") in eight federal district courts arising from Defendant Procter & Gamble's sale and marketing of aerosol products containing benzene – a known human carcinogen. Plaintiffs filed their class actions on behalf of consumers who purchased P&G's defective products and were damaged thereby.

Plaintiffs do not dispute that the statutory prerequisites of § 1407(a) are satisfied as to the Related Actions, and request that they be transferred to and centralized in the Southern District of Ohio before the Honorable Douglas R. Cole, to whom six of the Related Actions are currently assigned.

## II.   ARGUMENT

### A.   The Related Actions and Any Tag-Along Actions Are Appropriate for Transfer and Coordination Pursuant to 28 U.S.C. § 1407(a)

The Panel may order transfer and coordination if civil actions pending in different districts "involv[e] one or more common questions of fact" and transfer will further "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. §1407(a). "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." MANUAL FOR COMPLEX LITIGATION (FOURTH), §20.131 (4th ed. 2004). Because allowing the Related Actions to proceed independently would almost guarantee duplication of discovery, overlapping efforts, and risk inconsistent rulings, transfer and coordination for pretrial proceedings is necessary and appropriate.

#### 1.   The Related Actions Involve Multiple Common Questions of Fact

Transfer and coordination are appropriate because the Related Actions are based upon the same facts concerning P&G's manufacture, marketing and sale of its benzene-containing aerosol

products. The factual questions common to the Related Actions include, but are not limited to: (1) (a) whether the contaminated sprays contain, or are likely to contain, or exposed potential class members to unacceptable levels of benzene; (2) whether exposure to and consumption of benzene increases the risk of developing any of the benzene-caused cancers; (3) whether P&G knew or should have known that the contaminated sprays contained, or were likely to contain, unacceptable levels of benzene; (4) whether P&G acted to conceal the fact that the contaminated sprays expose users to unacceptable amounts of benzene; and (5) whether P&G was negligent in labeling, marketing, advertising, promoting and/or manufacturing and/or selling the contaminated sprays. As each of the Related Actions assert claims for relief against P&G on behalf of overlapping classes stemming from the same misconduct, the "common questions of fact" criterion is satisfied pursuant to §1407(a). *See In re Bausch & Lomb Inc. Contact Lens Solution Prods. Liab. Litig.*, 444 F. Supp. 2d 1336, 1338 (J.P.M.L. 2006) (coordinating cases under §1407 that shared factual allegations).

### 2. Transfer and Coordination of the Related Actions to the Southern District of Ohio Will Further the Convenience of the Parties and the Witnesses

Centralization under 28 U.S.C. §1407 is proper when it will "serve the convenience of the parties and witnesses and promote the just and efficient conduct of [the] litigation." *In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*, 626 F. Supp. 2d 1348 (J.P.M.L. 2009). Centralization is appropriate where, as here, it will "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save time and effort of the parties, the attorneys, the witnesses, and the courts." MANUAL FOR COMPLEX LITIGATION §20.131 at 220. Resolution of common issues in a single forum will further the convenience of all parties and witnesses. *See* 28 U.S.C. §1407(a). Because the Related Actions arise from the same corpus

of operative facts, the plaintiffs in these actions will require depositions of the same persons and discovery of the same documents. Maintenance of separate actions across multiple federal district courts would be greatly inconvenient for both parties and witnesses. Transfer and coordination of the Related Actions to a single federal district court will mitigate these problems by enabling a single judge to manage discovery and the parties to coordinate their efforts. This will reduce litigation costs and minimize inconvenience to the parties and witnesses, to the benefit of all litigations, third parties, and the courts. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 710 F. Supp. 2d 1378, 1380 (J.P.M.L. 2010) ("Centralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary."); *see also In re Enfamil Lipil Mktg. & Sales Practices Litig.*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011).

### 3. Coordination Will Promote the Just and Efficient Conduct of the Related Actions

Coordination and transfer are appropriate where it will promote the just and efficient resolution of related actions. 28 U.S.C. §1407(a). By eliminating the risk of duplicative discovery and the threat of repetitive and inconsistent pretrial rulings, discovery can be more effectively and efficiently managed, while the resources of the parties, attorneys, and judicial system are conserved. *See In re Union Pac. R.R. Co. Empl. Practices Litig.*, 314 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004). Because of the great overlap in factual allegations among the Related Actions, coordination is necessary to prevent conflicting pretrial rulings on many central issues, which would present substantial problems. *See In re LLRice 601 Contamination Litig.*, 466 F. Supp. 2d 1351, 1352 (J.P.M.L. 2006). Centralization here would have the "salutary effect of placing the actions in this docket before a single judge who can formulate a pretrial program that ensures that

pretrial proceedings are conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties and the judiciary." *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 659 F. Supp. 2d 1366, 1367 (J.P.M.L. 2009).

### 4. Centralization under Section 1407 is Appropriate Given the Number of Related Actions and the District Courts at Issue.

Centralization is particularly appropriate given the number of Related Actions pending in eight federal district courts. Although Plaintiffs do not know that additional actions will be filed, given the number of Related Actions and the number of differing federal district courts, § 1407 transfer is a useful and appropriate way to get in front of subsequent tagalong actions. *See In re Airline Baggage Fee Antitrust Litig.*, 655 F. Supp. 2d 1283, 1384 (J.P.M.L. 2009) ("In light of the very large number of individuals affected by the fees in question, the possibility of additional actions arising in other districts [with ensuing duplicative Section 1404(a) motion practice] looms.").

### B. The Southern District of Ohio Is The Most Logical, Efficient, And Convenient Venue For The Related Cases

The Southern District of Ohio is the most appropriate transferee forum based upon a majority of relevant factors, including: the location of P&G's headquarters; the experience, skill, and caseloads of the available judges; convenience of the parties; location of the witnesses and evidence; and the minimization of cost and inconvenience to the parties. *See, e.g.*, *Sony Gaming Networks,* MDL No. 2258 (transferring actions to the Southern District of California, noting that one of the defendants was headquartered in the Southern District of California and relevant documents and witnesses would likely be located within the district); *In re the Regents of the Univ. of California*, 964 F.2d 1128, 1136 (Fed. Cir. 1992); *In re Wheat Farmers Antitrust*

*Class Action Litig.*, 366 F. Supp. 1087, 1088 (J.P.M.L. 1973); Annotated Manual for Complex Litigation (Fourth), §20.131, at 303-04 (2010).

Defendant P&G's headquarters is in Cincinnati, Ohio, within the Southern District of Ohio. P&G's largest research and development facility is also located within the Southern District of Ohio, in Mason, Ohio. Research indicates that P&G's research and development of aerosol spray, the products at issue in this litigation, took place in P&G's Mason facility.[3] In contrast to P&G's corporate and operational presence in the Southern District of Ohio, Plaintiffs are not aware of any corporate presence of P&G in the Southern District of Florida. As a result, many key witnesses and documents will be located in or most easily accessible from the Southern District of Ohio, *not* Florida.

Furthermore, the Southern District of Ohio has demonstrated that it has the necessary resources to handle MDL proceedings by its strong record of accepting and successfully terminating MDL actions. In support of its Motion to Transfer to the Southern District of Florida, P&G claims that "at 378 pending cases per judgeship, the Southern District of Florida has a significantly lower average caseload than any of the possible alternative fora" including the "Southern District of Ohio [which] has 2,257…" Brief In Support Of Defendant The Procter & Gamble Company's Motion for Transfer Of Actions Pursuant To 28 U.S.C. § 1407 at 11 and n.6, citing U.S. District Courts-Combined Civil and Criminal Court Management Statistics (June 30, 2021), at https:www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2021/06/30-1. P&G's contention is intentionally misleading.

---

[3] *See, e.g. Job Posting: Aerosol / Sprays Packaging Researcher*, Procter & Gamble Careers, https://www.pgcareers.com/job/mason/aerosol-sprays-packaging-r-and-d-researcher/936/17545216736.

6

The Statistical Tables for the Federal Judiciary expressly caution against drawing statistical conclusions about the number of pending cases in a district precisely because of the effect of MDL transfers:

> NOTE: The number of pending cases in this report includes cases that have been transferred under a Multidistrict Litigation (MDL) order. Large numbers of civil cases may be temporarily assigned by the Judicial Panel on Multidistrict Litigation to a district judge for pretrial management. As MDL cases vary greatly among districts, **it is advisable to check with the relevant district court before drawing statistical conclusions about the number of pending cases for that district**.[4]

P&G ignored this advice. In fact, a review of the JPML Litigation Statistics shows that a single MDL – No. 2846, *In re Davo, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation* – is responsible for 14,847 pending cases in the Southern District of Ohio.[5] By contrast, the total number of MDL transfer cases in the entire Southern District of Florida pending as of December 15, 2021 is only 2,110 over 9 separate dockets. This not only accounts for the seemingly anomalous pending caseload per district judge in the Southern District of Ohio, but demonstrates that the Southern District of Ohio has ample capacity to handle its current MDL docket, and more.

### 1. The Southern District of Ohio Serves the Convenience of the Parties and Witnesses

Transfer of all actions to the Southern District of Ohio furthers the convenience of the parties and witnesses because P&G is headquartered there, many of its top officers reside there, and it is the location where discovery related to P&G's benzene-containing aerosol products is likely to be. *See, e.g.*, *In re: Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator*

---

[4] https://www.uscourts.gov/statistics/table/c-1/statistical-tables-federal-judiciary/2021/06/30 (emphasis added).

[5] https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-December-15-2021.pdf.

*Products Liability Litigation,*, No. MDL 3014, 2021 WL 4704801, at *2 (U.S. Jud. Pan. Mult. Lit. Oct. 8, 2021) (transferring to the Western District of Pennsylvania because the "products were primarily manufactured" there and thus "many of witnesses and much of the documentary evidence relevant" to the litigation will be located there.); *In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.*, 466 F. Supp. 3d 1384 (J.P.M.L. 2020) (transferring to the District of Massachusetts because defendant's senior management was located there); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1373 (J.P.M.L. 2019) (transferring actions to location of defendant's headquarters because "relevant documents and witnesses thus likely will be found there"); *In re Zofran (Ondansetron) Prod. Liab. Litig.*, 138 F. Supp. 3d 1381 (J.P.M.L. 2015) (transferring to the District of Massachusetts because four out of five related actions were pending before Judge Saylor, including the first-filed action, because Boston is easily accessible for the parties, and because Judge Saylor is an experienced transferee judge.) Because P&G is headquartered in Cincinnati, the Southern District of Ohio will likely be the location of the P&G decisionmakers responsible for manufacturing, marketing and selling the products, and other potentially relevant documents and witnesses. It serves the convenience of the parties and witnesses to litigate where evidence is likely to be located. Cincinnati, where Judge Cole is located, is a major metropolitan area and a Delta Airlines hub. It is equally accessible – though less congested and less expensive to access – than the Southern District of Florida.

    **C.    The Southern District of Florida Is Not An Appropriate Transferee Venue For The Constituent Cases**

P&G requests transfer to the Southern District of Florida, which has no inherent connection to the dispute or to the Defendant itself, because it is the venue of the first-filed among the constituent cases. Under the circumstances, this is not a compelling factor in determining an appropriate transferee district. The Panel has traditionally favored the venue of the first-filed case

8

where that case has progressed materially over other cases, where the first-filed assigned judge has particular experience in the dispute, or where there may be a large number of state court actions pending in the district. *See, e.g., In re Smith & Nephew BHR & R3 Hip Implant Products Liability Litigation*, MDL 2775, --- F. Supp.3d ---, 2017 WL1283668 (J.P.M.L 2017); *In re Johnson & Johnson Talcum Powder Products Liability Litigation*, 220 F. Supp.3d 1356 (J.M.P.L 2016).

None of those factors applies here. All of the cases are recently filed, and no significant litigation by way of motion practice or discovery has commenced in any of them. *See, e.g., In re Rembrandt Techs., LP, Patent Litigation*, 493 F. Supp.2d 1367, 1370 (J.P.M.L. 2007) (Rejecting first-filed forum as venue for consolidation even where proceedings "are somewhat further advanced [there] than those in the other actions"). To the Plaintiffs' knowledge, no state court actions have been filed in the Southern District of Florida either. In ordering centralization, "the Panel is certainly not bound to ratify the Section 1407 movant's choice of appropriate transferee district." *In re Halftone Color Separations ('809) Patent Litigation*, 547 F. Supp.2d 1383, 1385-85 (J.P.M.L. 2008) (rejecting first-filed forum where it had "no special connection to either the parties or the litigation's subject matter").

Moreover, there are no facts suggesting the Southern District of Florida is the "center of gravity" of this litigation. When considering "center of gravity," the Panel typically looks first to where the defendants, witnesses, and documents are located. *See In re Nine W. LBO Sec. Litig.*, 464 F. Supp. 3d 1383, 1385 (J.P.M.L. 2020) (Southern District of New York was the litigation's center of gravity because defendants were headquartered there, as were other entities, advisors, and lenders involved in the 2014 LBO). Under those criteria, the Southern District of Ohio is the obvious center of gravity for this litigation P&G's headquarters is in the Southern District of Ohio, its research and development of the products at issue took place in the Southern District of Ohio,

9

and many key members of its senior management are located in the Southern District of Ohio. Finally, the Southern District of Florida is not more convenient to the parties than the Southern District of Ohio, especially P&G, which is located in Cincinnati.

## III. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Panel grant Defendant's motion to transfer pursuant to Section 1407 but transfer the Related Actions to the Southern District of Ohio for coordinated pretrial proceedings before Judge Douglas Coleman.

Dated:    January 4, 2022

Respectfully submitted,

*/s/ Steven L. Bloch*
Steven L. Bloch
Ian W. Sloss
**SILVER GOLUB & TEITELL LLP**
184 Atlantic Street
Stamford, CT 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
sbloch@sgtlaw.com
isloss@sgtlaw.com

James B. Rosenthal
Joshua R. Cohen
Cohen Rosenthal & Kramer LLP
3208 Clinton Avenue
Cleveland, Ohio 44113
Tel. & Fax (216) 815-9500
jbr@crklaw.com
jcohen@crklaw.com

*Counsel for Plaintiffs*