UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE PROCTER & GAMBLE AEROSOL PRODUCTS MARKETING AND SALES PRACTICES LITIGATION | MDL No. 3025 |

INTERESTED PARTY RESPONSE OF PLAINTIFFS MIRIAM AMSELEM AND SHERI CLAYTON TO MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

*Oral Argument Requested*

Pursuant to Rule 6.2(e) of the Rules of Procedure for the Judicial Panel of Multidistrict Litigation ("Panel"), Plaintiff Miriam Amselem (Case No. 0:21-cv-62285-DPG) (filed Nov. 4, 2021)[1] and Plaintiff Sheri Clayton (Case No. 1:21-cv-24426-CMA) (filed Dec. 22, 2021) (collectively, "Movants"), respectfully file this Response to the Motion filed by Defendant The Procter & Gamble Company ("P&G") for Transfer of Actions to the Southern District of Florida Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings. *See* ECF 1.

Movants agree with Defendant P&G's request to transfer all actions to the Southern District of Florida before Judge Gayles, who is currently presiding over the first-filed case. For brevity, Movants adopt the background set forth in Defendant P&G's motion for transfer, as well as the legal arguments set forth therein. Movants merely emphasize the following points in support of transfer to the Southern District of Florida.

*First*, there is no question all pending cases arise out of the same common nucleus of fact,

---

[1] *Amselem* was the first-filed case involving P&G aerosol products, but was initially styled as *Bryski v. The Procter & Gamble Co.* Shortly after filing Plaintiff/Movant Amselem was substituted for former Plaintiff Bryski.

viz., the recent discovery by non-party Valisure of benzene in P&G's aerosol products.

***Second***, there is little doubt that coordination or consolidation will service the convenience of the parties and witnesses, and conserve judicial resources. The core issues in each case are the same – the benzene contamination in P&G's aerosol products. Further, since P&G filed its motion to transfer, a number of other related class action cases have been filed. The increasing number of cases warrants coordination or consolidation.

***Third***, and related to the foregoing points, since filing its motion, P&G has expanded its recall of aerosol antiperspirants to include aerosol dry shampoos and conditioners as well.[2] It now appears that the benzene contamination may be related to the aerosol propellant used by P&G, and not a particular product per se (e.g., antiperspirant versus dry shampoo versus dry conditioner; but rather the aerosol propellant used with all of these products). Further, the *Clayton* action (one of the Movants here), filed in the Southern District of Florida shortly after the expanded recall, is believed to be the first-filed case involving P&G aerosol dry shampoo or conditioner products (as opposed to just aerosol antiperspirant and deodorant products). Were the Panel inclined to create an MDL, Movants believe it is appropriate to include all P&G aerosol products, not just P&G's aerosol antiperspirants and deodorants, and certainly P&G's aerosol shampoo and conditioner products should be included.

***Fourth***, the Panel often considers the venue of the first-filed action when determining where to centralize related cases. *See, e.g.*, *In re Broiler Chicken Grower Antitrust Litig.*, 509 F. Supp. 3d 1359, 1362 (J.P.M.L. 2020) (centralizing in Oklahoma because "[t]he Oklahoma action is the

---

[2] *See* P&G ISSUES VOLUNTARY RECALL OF AEROSOL DRY CONDITIONER SPRAY PRODUCTS AND AEROSOL DRY SHAMPOO SPRAY PRODUCTS (Dec. 17, 2021), *available at* https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/pg-issues-voluntary-recall-aerosol-dry-conditioner-spray-products-and-aerosol-dry-shampoo-spray?utm_medium=email&utm_source=govdelivery (last accessed Jan. 3, 2022).

first-filed action"); *In re Juul Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 396 F. Supp. 3d at 1368 (noting pendency of first-filed case in district as factor). The *Amselem* action (formerly styled as *Bryski*), was the first-filed action among these related cases, having been filed shortly after the factual predicate for all plaintiffs' claims were made public via the Citizen's Petition filed by Valisure, the non-party pharmacy that detected the benzene in P&G's aerosol products. Additionally, multiple cases are now pending in the Southern District of Florida. The *Clayton* action, also pending in the Southern District of Florida, is believed to be the first-filed action involving P&G aerosol shampoo and conditioner products. Given this, the Southern District of Florida should be accorded appropriate consideration were the Panel to create an MDL; indeed, many other interested parties – including P&G itself – support the Southern District of Florida as the forum for all P&G aerosol product cases.

*Fifth*, as noted in P&G's motion, the Southern District of Florida is a relatively convenient and accessible forum; the District has a significantly lower average caseload than alternative fora; has a more favorable disposition rate for cases than alternative fora (particularly the Southern District of Ohio, which has an average time interval to disposition that is three times longer than the Southern District of Florida);[3] and Judge Gayles has the experience to handle an MDL of this anticipated size and complexity.

Dated: January 4, 2022

/s/ Ruben Honik
HONIK LLC
Ruben Honik, Esq.
Email: ruben@honiklaw.com
David J. Stanoch, Esq.
Email: david@honiklaw.com
1515 Market Street, Suite 1100

---

[3] The Southern District of Florida has a median time interval of 3.2 months for civil cases from initiation to termination, whereas the Southern District of Ohio has an interval of 10.4 months. *See* https://www.uscourts.gov/sites/default/files/data_tables/jb_c5_0930.2021.pdf (last accessed Jan. 3, 2022).

Philadelphia, PA 19102
**Counsel for Plaintiffs: Miriam Amselem and Sheri Clayton**
S.D. Florida, No. 0:21-cv-62285
S.D. Florida, No. 1:21-cv-24426