BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE PROCTER & GAMBLE AEROSOL PRODUCTS MARKETING AND SALES PRACTICES LITIGATION | MDL No. 3025 |

**DEFENDANT THE PROCTER & GAMBLE COMPANY'S REPLY TO RESPONSES TO MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

I. CENTRALIZATION OF ALL CONSUMER CLASS ACTIONS
 CHALLENGING P&G'S AEROSOL PRODUCTS IS APPROPRIATE. ........................ 1

II. THE ACTIONS SHOULD BE CENTRALIZED IN THE SOUTHERN
 DISTRICT OF FLORIDA. ................................................................................................ 3

    A. The Southern District of Florida is Preferred By Most Plaintiffs. ........................ 3

    B. The Southern District of Florida is the Most Appropriate Forum. ....................... 5

    C. The Southern District of Florida Has Several Advantages Over the
 Southern District of Ohio For This MDL. ............................................................. 7

    D. Centralization in the Southern or Eastern Districts of New York Would
 Not Be Appropriate. ............................................................................................ 10

CONCLUSION ................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Asencio v. The Procter & Gamble Co.*,
   No. 1:21-cv-11212-AJN (S.D.N.Y.) ........................................................................... 11

*Bryski v. The Procter & Gamble Co.*,
   No. 0:21-cv-62285-DPG (S.D. Fla.) ............................................................................. 2

*Delcid v. The Procter & Gamble Co.*,
   No. 1:21-cv-09454-GHW-KHP (S.D.N.Y.) ................................................................... 2

*In re Evenflo Co., Inc., Mktg, Sales Pracs. & Prods. Liab. Litig.*,
   466 F. Supp. 3d 1384 (J.P.M.L. 2020) ......................................................................... 9

*In re Jan. 2021 Short Squeeze Trading Litig.*,
   MDL No. 2989, 2021 WL 1258399 (J.P.M.L. Apr. 2, 2021) ........................................ 5

*In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs., and Prods.
   Liab. Litig.*,
   --- F. Supp. 3d ---, 2021 WL 4704800 (J.P.M.L Oct. 8, 2021) ................................. 5, 6

*Leyva v. The Procter & Gamble Co.*,
   No. 4:21-cv-10108-DPG (S.D. Fla.) ............................................................................. 2

*In re Monat Hair Care Prods. Mktg., Sales Pracs., and Prods. Liab. Litig.*,
   MDL No. 2841, Master Docket No. 1:18-md-02841-DPG (S.D. Fla.) ........................ 6

*In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   936 F. Supp. 2d 1379 (J.P.M.L. 2013) ......................................................................... 3

**Statutes**

28 U.S.C. § 1407 ................................................................................................................ 1, 2

**Other Authorities**

*FDA alerts drug manufacturers to the risk of benzene contamination in certain
   drugs*, U.S. Food & Drug Admin. (Dec. 23, 2021),
   https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-
   manufacturers-risk-benzene-contamination-certain-
   drugs?utm_medium=email&utm_source=govdelivery ............................................... 2

Judicial Emergencies (last updated Jan. 6, 2022), *available at*
   https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-
   emergencies (last visited Jan. 6, 2022) ..................................................................... 11

MDL Statistics Report - Distribution of Pending MDL Dockets by District (Dec. 15, 2021), *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-December-15-2021.pdf (last visited Jan. 7, 2022) ..........................................................................8

U.S. District Courts—Civil Cases Filed, Terminated, and Pending, by Jurisdiction—During the 12-Month Period Ending June 30, 2021, *available at* https://www.uscourts.gov/statistics/table/c-1/statistical-tables-federal-judiciary/2021/06/30 (last visited Jan. 7, 2022)........................................................................7

U.S. District Courts—Combined Civil and Criminal Federal Court Management Statistics (June 30, 2021), *available at* https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2021/06/30-1 (last visited Jan. 7, 2021)......................................................................8

U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2021, *available at* https://www.uscourts.gov/sites/default/files/data_tables/ jb_c5_0930.2021.pdf (last visited Jan. 6, 2022) ..........................................................................................7

U.S. District Count—Report Of All Civil Cases Pending Over Three Years As of March 31, 2021, *available at* https://www.uscourts.gov/sites/default/files/data_tables/cjra_7_0331.2021.pdf (last visited Jan. 10, 2022) ........................................................................................7

U.S. District Courts—Report Of Motions Pending Over Six Months As of March 31, 2021, *available at* https://www.uscourts.gov/sites/default/files/data_tables/cjra_8_0331.2021.pdf .....................6

**INTRODUCTION**

There are currently 25 related consumer class actions arising out of purchases of certain aerosol products sold by P&G that allegedly contain benzene. These 25 cases are pending in 14 districts, *see* Ex. A ("Updated Schedule of Actions"), and they have been brought by 18 different plaintiffs' counsel. All parties agree that these consumer class actions should be centralized for pretrial proceedings. The only disagreement is where centralization should occur.

P&G and 11 of the responses (including a response from one plaintiff that filed suit in Ohio) support centralization in the Southern District of Florida, where the first action was filed and where a similar MDL is pending involving allegations of benzene in another company's aerosol sunscreen products. The Southern District of Florida is a readily accessible and convenient forum for all parties, and there are multiple judges within that district who are well qualified and capable of presiding over this MDL.

The other three proposed venues do not have the same advantages as the Southern District of Florida. Although four responses propose the Southern District of Ohio, several factors make that forum less favorable as compared to the Southern District of Florida, including the relatively congested dockets of the District. A few other responses suggest centralization in the Eastern or Southern Districts of New York as alternatives. Those Districts would inconvenience the parties and impose further stress on the inundated judiciary in each District. The Panel should therefore centralize these cases in the Southern District of Florida.

**ARGUMENT**

**I. CENTRALIZATION OF ALL CONSUMER CLASS ACTIONS CHALLENGING P&G'S AEROSOL PRODUCTS IS APPROPRIATE.**

All parties agree that the requirements of 28 U.S.C. § 1407 are satisfied, and that the 25 consumer class actions against P&G currently pending in 14 districts across the country should be

centralized for pretrial proceedings. All 25 actions involve common questions of fact related to the alleged presence of trace levels of benzene in certain aerosol products manufactured by the same P&G contract manufacturer.[1] The cases also present the question of what level of benzene in these aerosol products would be unfit for sale to consumers. Although many plaintiffs alleged that the FDA regulations prohibit the sale of *any* product with traces of benzene,[2] the FDA has rejected this position. Instead, the FDA has advised manufacturers that they need not immediately recall products that have low levels of benzene.[3]

Centralization of these actions would be more convenient for the parties and witnesses than litigating across a dozen geographically dispersed districts and would eliminate the risk of inconsistent rulings by the different courts. Centralization is particularly appropriate given that "plaintiffs in the . . . related actions are represented by different law firms, making the potential for informal coordination and cooperation between the parties in the existing actions difficult and unlikely." Plaintiffs Angela Leyva, Andrea Fahey, Otto Delcid, and Nicole Asencio's Response ("Leyva Response") at 4, ECF No. 43.

There also is no dispute that all pending consumer class actions arising out of P&G's antiperspirant, deodorant, dry shampoo, and dry conditioner aerosol products should be included in the MDL, including those filed after P&G first moved for centralization. These products were

---

[1] By acknowledging that the actions include "common questions of fact" under 28 U.S.C. § 1407, P&G does not concede that the requirements for class certification under Federal Rule of Civil Procedure 23 are satisfied, and reserves all defenses to class certification.

[2] *See, e.g.*, First Am. Compl. ¶ 12, *Bryski v. The Procter & Gamble Co.*, No. 0:21-cv-62285-DPG (S.D. Fla.); Compl. ¶ 9, *Leyva v. The Procter & Gamble Co.*, No. 4:21-cv-10108-DPG (S.D. Fla.); Compl. ¶ 9, *Delcid v. The Procter & Gamble Co.*, No. 1:21-cv-09454-GHW-KHP (S.D.N.Y.).

[3] *See FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs*, U.S. Food & Drug Admin. (Dec. 23, 2021), https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs?utm_medium=email&utm_source=govdelivery (stating that manufacturers should "immediately recall[]" drugs if the "benzene level in the products [is] above 2 ppm [parts per million]").

manufactured by the same contract manufacturer, and the cases related to them present overlapping factual questions about "the levels of benzene in the products, whether Defendant knew or should have known that the products contained elevated levels of benzene, and whether the marketing, advertising, packaging, labeling and other promotional materials for the products are deceptive." Leyva Response at 2; *see also* Interested Party Response of Plaintiffs Miriam Amselem and Sheri Clayton ("Amselem Response") at 2, ECF No. 34 ("[I]t is appropriate to include all P&G aerosol products, not just P&G's aerosol antiperspirants and deodorants, and certainly P&G's aerosol shampoo and conditioner products should be included."). To the extent plaintiffs suggest that different analyses or discovery may be required for each product, *see* Interested Party Response of Plaintiffs Beth Blake and Lindsey Labella ("Blake Response"), ECF No. 40, at 2–3, those issues can be adequately addressed by the transferee judge. *See In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 936 F. Supp. 2d 1379, 1379 (J.P.M.L. 2013) ("Transferee judges have demonstrated the ability to establish and effectively manage common and individual discovery tracks, thereby realizing the benefits of centralization without delaying or compromising consideration of case-specific issues.").

## II. THE ACTIONS SHOULD BE CENTRALIZED IN THE SOUTHERN DISTRICT OF FLORIDA.

### A. The Southern District of Florida is Preferred By Most Plaintiffs.

Eleven of the responses, submitted on behalf of plaintiffs in 14 of these cases, support centralization in the Southern District of Florida, where the first case was filed.[4] That group

---

[4] *See* Interested Party Response of Plaintiff Toporek ("Toporek Response") at 1, ECF No. 24; Interested Party Response of Plaintiffs Norma Bernsee, Abby Nelson, and Shirley Thiele ("Bernsee Response") at 1, ECF No. 28; Interested Party Response of Plaintiff Miriam Freund ("Freund Response") at 1, ECF No. 31; Interested Party Response of Plaintiff Reese Lyle ("Lyle Response") at 1, ECF No. 32; Amselem Response at 1; Interested Party Marianna Campbell's Response ("Campbell Response") at 2, ECF No. 35; Plaintiff James Dethrow's Interested Party

3

includes not only plaintiffs who reside in or filed suit in Florida (Amselem, Leyva, Fahey, and Clayton), but also plaintiffs who reside in New York (Asencio, Delcid, Dethrow, Freund, and Toporek), California (Canaday and Quinones), Oregon (Lyle), Illinois (Bernsee), Michigan (Campbell), Tennessee (Nelson), New Mexico (Thiele), and West Virginia (Hudnall).

By contrast, only four responses (collectively, "Opposing Plaintiffs") oppose centralization in that venue.[5] Their arguments do not undermine the case for centralization in Florida.

For example, some Opposing Plaintiffs claim that Florida is an inconvenient forum for plaintiffs, particularly those on the West Coast. *See* Baker Opposition at 7; Pickens Response at 5. In fact, several West Coast plaintiffs *support* centralization in the Southern District of Florida. *See* Lyle Response at 1 (Oregon); Canaday Response at 1 (California); Quinones Response at 1 (California).[6] Further, all West Coast plaintiffs would be members of the putative nationwide and state-wide classes pled in this MDL, and plaintiffs for whom the Southern District of Florida is a convenient forum can seek to represent their interests. The Panel has previously found that the Southern District of Florida "is a relatively convenient and accessible forum" for an MDL in

---

Response ("Dethrow Response") at 1, ECF No. 36; Interested Party Response of Plaintiff Haley Canaday ("Canaday Response") at 1, ECF No. 41; Leyva Response at 1; Interested Party Response of Plaintiff Gloria Quinones ("Quinones Response") at 1, ECF No. 44; Interested Party Response of Plaintiff Deborah Hudnall ("Hudnall Response") at 1, ECF No. 46.

[5] *See* Plaintiffs Matthew Lopez, Erik Velasques, Frank Ortega, Erica Esquivel, and Joshua Wallace's Response ("Velasques Response"), ECF No. 30; Plaintiffs Tyler Baker, Brian Stanfield, Patricia Kelley, Jeremy Wilson, Dante Melendez, and Darrell Stewart's Opposition ("Baker Opposition") , ECF No. 38; Blake Response, ECF No. 40; Plaintiffs Gregory Pickens and Ryan Rinz's Response ("Pickens Response"), ECF No. 45. Although these Opposing Plaintiffs have filed seven cases, many of them are represented by the same counsel: *Velasques* and *Esquivel* were filed by the same counsel, *Baker* and *Kelley* were filed by the same counsel, and *LaBella* and *Blake* were filed by the same counsel.

[6] The only plaintiffs that reside on the West Coast and oppose centralization in the Southern District of Florida are represented by the same counsel. *See* Velasques Response, ECF No. 30. The California plaintiffs in *Aviles v. The Procter & Gamble Co.*, No. 2:21-cv-02108 (E.D. Cal.), did not respond to P&G's transfer motion.

4

similar circumstances. *In re Jan. 2021 Short Squeeze Trading Litig.*, MDL No. 2989, 2021 WL 1258399, at *3 (J.P.M.L. Apr. 2, 2021); *see also In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs., and Prods. Liab. Litig.* ("*J&J Aerosol Sunscreen*"), --- F. Supp. 3d ---, 2021 WL 4704800, at *2 (J.P.M.L Oct. 8, 2021) (finding "the Southern District of Florida offers a convenient and readily accessible district").

**B.     The Southern District of Florida is the Most Appropriate Forum.**

In its opening Motion, P&G outlined the reasons why the Southern District of Florida is the most appropriate forum. *See* ECF No. 1-1 ("Mot.") at 10–13. Opposing Plaintiffs claim that centralization in the district of the first-filed case (*i.e.*, the Southern District of Florida) is only appropriate where that case has progressed materially over other cases. *See* Velasques Response at 8–9; Baker Opposition at 7. As the Panel clarified in its recent decision in *J&J Aerosol Sunscreen*, that is not the case. There, the Panel transferred the actions to the Southern District of Florida where the first-filed case was pending, even though that case was not more procedurally advanced than the other cases at the time of centralization and even though the defendant was not headquartered in that district. *See J&J Aerosol Sunscreen*, 2021 WL 4704800, at *2. And it did so even though (as here) more cases were pending in the district where the defendant was headquartered as compared to the district where the first case was filed. The approach favored by P&G and the majority of plaintiffs in this case is consistent with the Panel's approach in *J&J Aerosol Sunscreen*.

The pendency of the *J&J Aerosol Sunscreen* MDL in the Southern District of Florida makes this district a particularly attractive forum, as the Southern District of Florida would already have experience handling an MDL involving claims very similar to those presented here. *J&J Aerosol Sunscreen* involves a slew of consumer class actions that were filed after Valisure reported that it had detected trace levels of benzene in certain aerosol sunscreen products and after Johnson

5

& Johnson subsequently recalled those products. Transferring the P&G actions to a forum that has already encountered and considered analogous issues in the context of an MDL would promote the efficient conduct and resolution of the litigation.

The Panel will have several well-qualified judges in the Southern District of Florida from which to choose in assigning this MDL. Judge Darrin P. Gayles, to whom the first-filed case and at least one additional case have been assigned, has experience managing an MDL of a similar size, and the parties in that MDL have recently indicated that the cases were likely to settle, meaning that Judge Gayles may have capacity to take on this proceeding. *See In re Monat Hair Care Prods. Mktg., Sales Pracs., and Prods. Liab. Litig.*, MDL No. 2841, Master Docket No. 1:18-md-02841-DPG (S.D. Fla. Mar. 21, 2018), ECF No. 247. Judge Gayles also has no cases listed on the most recent Report of Motions Pending Over Six Months ("Six-Month Report"), suggesting that he has the capacity to undertake a new MDL with his existing caseload.[7]

Judge Anuraag Singhal is another option. The Panel assigned the *J&J Aerosol Sunscreen* MDL to Judge Singhal. A class-wide settlement was quickly reached and has been submitted to the Court for preliminary approval. *See J&J Aerosol Sunscreen*, MDL No. 3015, Master Docket No. 0:21-md-03015-AHS (S.D. Fla.), ECF No. 1 (Oct. 8, 2021 transfer order); ECF No. 25 (Oct. 29, 2021 notice of settlement); ECF No. 55 (Dec. 17, 2021 preliminary approval motion). Assigning this MDL to Judge Singhal would thus further the objective of involving a newer judge in the MDL process, yet one with specific relevant experience in the operative issues. *See* Bernsee Response at 2; Toporek Response at 2; *see also J&J Aerosol Sunscreen*, 2021 WL 4704800, at *2 (noting that Judge Singhal "has not yet had the opportunity to preside over multidistrict

---

[7] U.S. District Courts—Report Of Motions Pending Over Six Months As of March 31, 2021, *available at* https://www.uscourts.gov/sites/default/files/data_tables/cjra_8_0331.2021.pdf (last visited Jan. 10, 2022).

litigation."). Because both cases involve allegations that products were sold that contain undisclosed benzene, there are advantages to assigning the same judge to both proceedings. Like Judge Gayles, Judge Singhal also does not have any cases listed on the Six-Month Report or the Report of All Civil Cases Pending Over Three Years ("Three-Year Report").[8]

### C. The Southern District of Florida Has Several Advantages Over the Southern District of Ohio For This MDL.

Opposing Plaintiffs argue that the Panel should instead centralize the Related Actions in the Southern District of Ohio, and they ask for the cases to be assigned to Judge Douglas R. Cole. P&G does not dispute that Judge Cole is well qualified and capable of overseeing an MDL. Even so, centralization in the Southern District of Florida appears to have several advantages over the Southern District of Ohio.

Most significantly, the Southern District of Florida has a faster and less congested docket than the Southern District of Ohio. *See* Mot. at 11–12. In the Southern District of Florida, the median time interval for civil cases from initiation to termination is only 3.2 months, compared to 10.4 months in the Southern District of Ohio.[9] The Southern District of Florida also carries a lighter per-judge caseload than the Southern District of Ohio. Contrary to Opposing Plaintiffs' assertions, *e.g.*, Velasques Response at 6–7,[10] this is true even after one accounts for the number

---

[8] *See* U.S. District Count—Report Of All Civil Cases Pending Over Three Years As of March 31, 2021, *available at* https://www.uscourts.gov/sites/default/files/data_tables/cjra_7_0331.2021.pdf (last visited Jan. 10, 2022).

[9] U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2021, *available at* https://www.uscourts.gov/sites/default/files/data_tables/jb_c5_0930.2021.pdf (last visited Jan. 6, 2022).

[10] The "warning" that the Velasques Response accuses P&G of ignoring belongs to a different chart not relied upon in P&G's Motion. *Compare* U.S. District Courts—Civil Cases Filed, Terminated, and Pending, by Jurisdiction—During the 12-Month Period Ending June 30, 2021, *available at* https://www.uscourts.gov/statistics/table/c-1/statistical-tables-federal-

7

of MDL actions pending in each district. After accounting for the number of MDL actions identified by these Opposing Plaintiffs,[11] the average caseload per judgeship in the Southern District of Ohio (approximately 401 pending cases per judgeship[12]) still significantly exceeds the average caseload for the Southern District of Florida (approximately 261 pending cases per judgeship[13]).

Opposing Plaintiffs overstate the convenience of litigating in Ohio as opposed to Florida. Although eight of the actions are currently pending in the Southern District of Ohio, only one of the plaintiffs that have sued P&G actually resides in Ohio. Furthermore, one plaintiff who filed suit in the Southern District of Ohio does not support centralization in that forum, instead favoring centralization in the Southern District of Florida. Campbell Response at 1. And plaintiffs who are geographically closer to the Southern District of Ohio likewise prefer litigating in Florida over Ohio. *See* Dethrow Response at 3 ("[A]lthough Plaintiff Dethrow and his counsel are located in Illinois, Florida is a more or at least equally convenient forum when compared to the other forums

---

judiciary/2021/06/30 (last visited Jan. 7, 2022) (cited in Velasques Response at 7 n.4), *with* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (June 30, 2021), *available at* https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2021/06/30-1 (last visited Jan. 7, 2022) (cited in Mot. at 12 n.6).

[11] The figures relied upon by plaintiffs are current as of December 15, 2021, while data regarding the total number of pending cases by district is available only as of June 30, 2021. *Compare* MDL Statistics Report - Distribution of Pending MDL Dockets by District (Dec. 15, 2021), *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-December-15-2021.pdf (last visited Jan. 7, 2022) (cited in Velasques Response at 7 n.5), *with* U.S. District Courts—Combined Civil and Criminal Federal Court Management Statistics (June 30, 2021), *available at* https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2021/06/30-1 (last visited Jan. 7, 2021) (cited in Mot. at 12 n.6).

[12] Subtracting the 14,848 MDL actions pending in the Southern District of Ohio from the 18,058 total pending cases in that district yields 3,210 pending cases. When divided by the eight Southern District of Ohio judgeships, the result is approximately 401 cases per judgeship.

[13] Subtracting the 2,110 MDL actions pending in the Southern District of Florida from the 6,800 total pending cases in that district yields 4,690 pending cases. When divided by the 18 Southern District of Florida judgeships, the result is approximately 261 cases per judgeship.

8

where the other Related Actions are pending."); Campbell Response at 1 (Michigan plaintiff "supports consolidation of the Relevant Actions as well as the proposed transfer venue of the Southern District of Florida").

Opposing Plaintiffs also overstate the significance of the location of P&G's headquarters in the Southern District of Ohio.[14] While it is true that, in selecting a transferee district, the Panel generally considers the defendant's location, the cases cited by Opposing Plaintiffs do not support a rigid application of that principle. For example, in *In re Evenflo Company, Inc., Marketing, Sales Practices & Products Liability Litigation*, the Panel centralized related cases in the District of Massachusetts, even though the defendant maintained its principal place of business in the Southern District of Ohio. 466 F. Supp. 3d 1384, 1385 (J.P.M.L. 2020). To the extent Opposing Plaintiffs assert that the Southern District of Ohio would be a less burdensome forum *for P&G* given its location, *see, e.g.*, Baker Opposition at 5, P&G's willingness to litigate in and as necessary travel to the Southern District of Florida moots that concern, *see* Mot. at 11.

---

[14] Several Opposing Plaintiffs incorrectly claim (1) that P&G dry shampoos and conditioners are "manufactured in West Virginia, closer to the Southern District of Ohio; whereas the antiperspirant and deodorants are manufactured in North Carolina," Blake Response at 3; (2) that "P&G's plant in Brown Summit, North Carolina is the production facility for many Old Spice and Secret products," Baker Opposition at 6; and (3) that "the Southern District of Ohio will likely be the location of the P&G decisionmakers responsible for manufacturing, marketing and selling the products, and other potentially relevant documents and witnesses," Velasques Response at 8. In reality, the recalled aerosol products were made at a contract manufacturer's facilities in Indiana (dry conditioners and dry shampoos) or Illinois (antiperspirant and deodorants).

9

### D. Centralization in the Southern or Eastern Districts of New York Would Not Be Appropriate.

As an alternative to the Southern District of Florida, some responses propose centralization in either the Eastern District of New York[15] or the Southern District of New York.[16] Neither are suitable venues.

As an initial matter, no plaintiff advocates for centralization in New York in the first instance. Instead, all three groups of plaintiffs favor centralization in the Southern District of Florida. Toporek Response at 1 ("[Plaintiff] fully support[s] Procter & Gamble's request for transfer and consolidation of the related actions to the Southern District of Florida as well as the actions proceeding before Judge Gayles."); Bernsee Response at 1 ("[Plaintiffs] fully support Procter & Gamble's request for transfer and consolidation of the related actions to the Southern District of Florida as well as the actions proceeding before Judge Gayles."); Leyva Response at 1 ("Movants agree that the . . . pending actions in this multidistrict proceeding should be transferred and coordinated or consolidated for pretrial proceedings in the Southern District of Florida, before the Honorable Judge Darrin P. Gayles.").

Further, only one of these responses argues that it would be convenient for the parties to litigate in either of these districts. *See* Leyva Response at 5. Other than the plaintiffs' residence in and alleged purchase of their products in New York, that state has no other connection to this dispute. Nor does P&G have any significant operations in New York, and no plaintiff claims otherwise.

---

[15] *See* Toporek Response at 2; Bernsee Response at 2.
[16] *See* Leyva Response at 5–6.

There are other reasons to avoid assigning this case to these courts. Judicial emergencies exist in both the Eastern and Southern Districts of New York.[17] Moreover, both Judge Joan M. Azrack (suggested by the *Toporek* and *Bernsee* plaintiffs as a possible judge) and Judge Vincent L. Briccetti (initially suggested by the *Leyva*, *Delcid*, and *Asencio* plaintiffs as a possible judge) have a lengthy backlog of pending cases. Five of Judge Azrack's cases appear on the Six-Month Report and 76 appear on the Three-Year Report. Judge Briccetti no longer presides over the *Asencio* case,[18] and he also has 40 cases listed on the Three-Year Report. Increasing the burdens on these courts would not facilitate the just and efficient litigation of these cases, especially given that there is no connection between the parties and the forum and other, more appropriate venues are available.

## CONCLUSION

The Actions listed on the Updated Schedule of Actions, and any related tag-along cases, should be centralized for pretrial proceedings in the Southern District of Florida and assigned to either Judge Gayles or Judge Singhal.

---

[17] *See* Judicial Emergencies (last updated Jan. 6, 2022), *available at* https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies (last visited Jan. 6, 2022).

[18] The *Asencio* case was reassigned on January 11, 2022, from Judge Briccetti to Judge Alison J. Nathan (who was recently nominated to the U.S. Court of Appeals for the Second Circuit), after counsel for the *Asencio* plaintiff (who also represents the *Leyva* and *Delcid* plaintiffs) acknowledged in response to an order from Judge Briccetti that *Asencio* "should be reassigned to the Manhattan Courthouse," rather than the White Plains courthouse where Judge Briccetti sits. *Asencio v. The Procter & Gamble Co.*, No. 1:21-cv-11212-AJN (S.D.N.Y.), ECF No. 6.

Dated: January 11, 2022

Respectfully submitted,

*/s/ Andrew Soukup*
Andrew Soukup
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-5066
asoukup@cov.com

*Counsel for Defendant*
*The Procter & Gamble Company*